# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# EASTERN DIVISION

ARTHUR C. LEWIS, JR.,
a/k/a Author Lewis,
ADC #66947                                                                    PLAINTIFF

V.                          2:13CV00073 JLH/JTR

LATRICE HARRIS, Nurse,
East Arkansas Regional Unit, ADC, et al.                    DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge J. Leon Holmes. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

# I. Introduction

Plaintiff, Arthur C. Lewis, Jr., is a prisoner in the East Arkansas Regional Unit ("EARU") of the Arkansas Department of Correction ("ADC"). He has filed this *pro se* §1983 action alleging that Defendants failed to provide him with constitutionally adequate medical care for his injured right knee. *Docs. 2 & 4.* Defendants have moved for summary judgment, and Plaintiff has filed several Responses. *Docs. 100, 101, 102, 107, 108, 109, & 110.*

The Court recommends that Defendants' Motion for Summary Judgment be granted, and that this case be dismissed, with prejudice.[1]

# II. Facts

The relevant undisputed facts, viewed in the light most favorable to Plaintiff, are as follows:

1.  On April 27, 2010, Plaintiff slipped in the shower at the EARU and fell, injuring his right knee. *Doc. 101, Exs. A & C.*

2.  Dr. Joseph Hughes, who is no longer a Defendant, examined Plaintiff's

---

[1] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

knee and ordered x-rays, which revealed a high-riding patella with soft tissue swelling along the anterior right knee. During the next several months, Dr. Hughes treated that condition by giving Plaintiff 500 mg of Naproxen, three times a day.[2] *Id.*

3. On October 4, 2010, Plaintiff submitted a sick call request seeking a steroid injection for his knee. Defendant Nurse Latrice Harris denied that request because Plaintiff did not have a prescription for steroid injections.[3] *Doc. 57, Ex. 5 at 5; Doc. 101, Ex. B at 33-36.*

4. In early November of 2010, Dr. Hughes retired, and Defendant Dr. Don Ball began his employment as a physician at the EARU. *Doc. 101, Ex. C.*

5. On November 29, 2010, Defendant Dr. Ball examined Plaintiff's knee for the first time. After doing so, Defendant Dr. Ball requested a consultation with a private orthopedic surgeon because Plaintiff continued to have pain, swelling, and a limited range of motion in his right knee. The ADC Region Medical Director, who is not a Defendant, denied that consultation request and suggested that Plaintiff's knee be treated with steroid injections. Defendant Dr. Ball implemented that

---

[2] Plaintiff concedes that the medical care rendered by Dr. Hughes was constitutionally adequate, and he has voluntarily dismissed all claims against him. *Doc. 97; Doc. 101, Ex. B at 47-48.*

[3] On September 21, 2010, Dr. Hughes noted that "if no change, plan to inject knee." Although he may have considered ordering steroid injections, there is no indication in the record that Dr. Hughes actually prescribed that medication. Instead, on October 14, 2011, which was after Plaintiff's encounter with Nurse Harris, an APN prescribed a tapering dosage of oral steroids. Doc. 57, Ex. 5 at 5; Doc. 101, Ex. B at 48, 81-82.

recommendation. *Doc. 101, Ex. A at 5-9 & Ex. C.*

6. On January 3, 2011, Defendant Dr. Ball submitted a second orthopedic consultation request, which was approved. *Id.*

7. On February 2, 2011, the orthopedic surgeon noted that the steroid injections had helped, but that arthroscopic surgery was needed. Defendant Dr. Ball submitted a request for surgery, which was approved. *Id.*

8. On March 7, 2011, the orthopedic surgeon performed outpatient arthroscopic surgery to resect the lateral meniscus of Plaintiff's right knee. The surgeon recommended Tylenol 3 for post-surgical pain and 600 mg of Ibuprofen for continuing pain management. Defendant Dr. Ball implemented those recommendations. The surgeon also recommended crutches, which Defendant Dr. Ball provided, but Plaintiff refused use. *Id., Ex. A at 10 -19 & Ex. B at 30 & 56.*

9. On April 13, 2011, Plaintiff returned to the orthopedic surgeon, who recommended that Plaintiff receive Tramadol for pain. Defendant Dr. Ball determined that Tramadol, which is a narcotic, was not medically necessary to control Plaintiff's pain. Instead, Defendant Dr. Ball prescribed 600 mg of Ibuprofen and 500 mg of Naproxen, each to be taken three times a day, to decrease inflamation and pain. *Id., Ex. A at 19, 25, & 82.*

10. On June 8, 2011, Plaintiff had his last follow-up examination with the

orthopedic surgeon, who recommended that Plaintiff wear a knee sleeve and that he be restricted from prolonged standing, stooping, or crawling. Defendant Dr. Ball implemented those recommendations.[4] *Id., Ex. A at 21-23.*

11. In his sworn Affidavit, Dr. Robert Floss[5] states that, after reviewing the medical records, it is his professional medical opinion that the "care and treatment provided" to Plaintiff for his injured right knee was "appropriate and satisfactory" and "consistent with sound medical practices." *Doc. 101, Ex. C at 4.*

### III. Discussion

**A.  Inadequate Medical Care Claims against Defendants Ball, Butler, and Harris**

Plaintiff alleges that Defendants Ball, Butler, and Harris failed to provide him with constitutionally adequate medical care for his injured right knee. To prevail on that claim, Plaintiff must prove that: (1) he had objectively serious medical needs; and (2) Defendant subjectively knew of, but deliberately disregarded, those serious needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

The parties agree that Plaintiff's knee injury constituted an objectively serious

---

[4] The Court has previously ruled that any medical care claims "arising after June 13, 2011, are clearly barred by the exhaustion requirement." *Doc. 71 at 8; Doc. 78.*

[5] Dr. Floss is a family practitioner, who is currently the Associate Regional Medical Director for the private corporation that provides medical services to ADC inmates. *Doc. 101, Ex. C.*

medical need. Thus, the relevant inquiry is whether each of the Defendants was deliberately indifferent to Plaintiff's need for treatment for that medical condition. It is well settled that negligence, gross negligence, or a mere disagreement with the course of medical care does not constitute deliberate indifference. *Langford,* 614 F.3d at 460. Instead, deliberate indifference "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

The Court will now analyze whether the record, viewed in the light most favorable to Plaintiff, establishes that Defendants are entitled to a summary judgment on Plaintiff's inadequate medical care claims.

1.  **Defendant Latrice Harris**

Plaintiff alleges that, on October 4, 2010, Defendant Nurse Harris was deliberately indifferent when she denied his sick call request seeking a steroid injection. The *undisputed* medical records demonstrate that Plaintiff did not, at that time, have a prescription for steroid injections.[6] Thus, Defendant Harris was not deliberately indifferent when she refused to give that medication to Plaintiff. Further,

---

[6] As previously noted, the medical evidence establishes that, in September of 2010, Dr. Hughes *considered the possibility* of giving steroid injections to Plaintiff *sometime in the future.* Plaintiff, however, did not actually receive a prescription for *oral* steroids until October 14, 2011, which was ten days *after* he saw Defendant Harris.

even if Plaintiff had a prescription to receive steroid injections on October 4, 2010, it is well settled that the occassional failure to receive prescribed medications does not rise to the level of a constitutional violation. *See Hines v. Anderson;* 547 F.3d 915, 920-21 (8th Cir. 2008); *Ervin v. Busby*, 992 F.2d 147, 150-51 (8th Cir. 1993).

Accordingly, Defendant Harris is entitled to summary judgment, and the claims against her should be dismissed, with prejudice.

### 2.     **Defendant Quible Butler**

Plaintiff alleges that, on an unspecified date, Defendant Nurse Quible Butler acted with deliberate indifference when she removed several surgical stitches from his right knee. Plaintiff believes that, because Defendant Butler was an LPN and not an RN, she was not medically qualified to remove stitches. Plaintiff, however, has not provided any medical evidence to support his subjective belief that Defendant Butler was not qualified to remove his stitches. *See Langford,* 614 F.3d at 460 (holding that a prisoner's disagreement with a medical provider's treatment decisions does not rise to the level of a constitutional violation); *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) (same).

Similarly, he has not offered any evidence to refute Dr. Floss's professional medical opinion that all medial care was "appropriate and satisfactory" and "consistent with sound medical practices." *Doc. 101, Ex. C at 4*; *see also Nelson v. Shuffman,* 603

F.3d 439, 449 (8th Cir. 2010) (holding that: "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment"); *Meuir v. Greene Cnty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) (same). Finally and most importantly, Plaintiff conceded during his deposition that Defendant Dr. Ball supervised the removal of his stitches and that he suffered no harm as result of Defendant Butler removing them. *Doc. 101, Ex. 5 at 32 & 43-46.*

Accordingly, Defendant Butler is entitled to summary judgment, and the claims against her should be dismissed, with prejudice.

### 3. Defendant Dr. Ball

Plaintiff contends that Defendant Dr. Ball was deliberately indifferent to his serious medical needs when he decided to treat Plaintiff's pain and inflammation with Ibuprofen and Naproxen, instead of giving him Tramadol, as recommended by the orthopedic surgeon. It is well settled that a prison doctor remains free to exercise his independent professional judgment, and that inmate is not entitled to any particular course of treatment. *Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008); *Dulany,* 132 F.3d at 1240. Further, as previously mentioned, Plaintiff has not produced any medical evidence to counter Dr. Floss's professional medical opinion that the medical

care Plaintiff received was "appropriate and satisfactory" and "consistent with sound medical practices." *Doc. 101, Ex. C at 4; see also Nelson,* 603 F.3d at 449; *Meuir,* 487 F.3d at 1119.

Finally, in his Response to Defendants' Motion for Summary Judgment, Plaintiff appears to be arguing that there was an improper eleven-month delay in him receiving corrective surgery. *Doc. 107.* There are two flaws with this argument.

First, there is no evidence that Defendant Dr. Ball, or any of the other Defendants, was responsible for the delay in Plaintiff having corrective surgery.[7] Second, Plaintiff has not produced any medical evidence demonstrating that he was harmed by the delay in receiving surgery. *See Gibson v. Weber*, 433 F.3d 642, 646-47 (8th Cir. 2006) (explaining that, to avoid summary judgment, an inmate must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment); *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (same).

Accordingly, Defendant Dr. Ball is entitled to summary judgment, and the claims against him should be dismissed, with prejudice.

---

[7] To the contrary, the *undisputed* medical evidence establishes that Defendant Dr. Ball: (1) requested an orthopedic consult after he examined Plaintiff the first time; (2) submitted a second orthopedic consult within two months after his first consult request was denied; and (3) obtained approval for surgery a month after the orthopedic surgeon first recommended it. *Doc. 101, Exs. A & B.*

**B.      Corrective Inaction Claims Against Defendants Strickland & Yarbrough**

Finally, Plaintiff alleges that Defendants Strickland and Yarbrough violated his constitutional rights when they failed to take corrective action after reviewing his grievances about the medical care he was receiving for his right knee.[8] That claim fails, as a matter of law, because Plaintiff has failed to demonstrate that he received constitutionally inadequate medical care. *See Parrish v. Ball,* 594 F.3d 99, 1002 (8th Cir. 2010) (explaining that, to prevail on a corrective inaction claim, a prisoner must establish that the defendants were aware that his constitutional rights were being violated, but failed to take corrective action)*; Sims v. Lay*, Case No. 05-2136, 2007 WL 328769 (8th Cir. Feb. 2, 2007) (unpublished decision) (holding that a supervisory liability claim fails, as a matter of law, when there has been no underlying constitutional violation).

---

[8] In their Motion for Summary Judgment, Defendants Strickland and Yarbrough assert that Plaintiff is seeking to hold them vicariously liable for the other Defendants' actions, which is not a permissible basis for imposing liability in a § 1983 action. *Doc. 102 at 7-8.* Defendants, however, have misconstrued Plaintiff's argument. Plaintiff is not asserting vicarious liability. Instead, he claims that Defendants Strickland and Yarbrough "through their own individual actions" became personally involved in the alleged constitutional violation when they failed to take corrective action after reviewing his grievances about his medical care. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (explaining that, because there is no vicarious liability in § 1983 action, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir.1995) (explaining that prison officials can be held liable, in a § 1983 action, when their corrective inaction constitutes deliberate indifference). However, for the reasons explained in this Recommendation, Plaintiff's corrective action inaction claim against Defendants Strickland and Yarbrough fails, as matter of law, because there was no constitutional violation for them to correct.

Accordingly, Defendants Strickland and Yarbrough are entitled to summary judgment, and the claims against them should be dismissed, with prejudice.

### IV.  Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment *(Doc. 100)* be GRANTED, and that this case be DISMISSED, WITH PREJUDICE.

2. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

Dated this 28th day of May, 2015.

*/s/ J. Thomas Ray*
UNITED STATES MAGISTRATE JUDGE